UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DENNIS BROADNAX,
    Petitioner,

v.     No. 3:09cv720 (SRU)

UNITED STATES OF AMERICA,
    Respondent.

## RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On May 4, 2009, Dennis Broadnax filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He raised a single claim for relief: that his attorneys rendered ineffective assistance by failing to file an appeal on his behalf. Thereafter, on September 19, 2012, Broadnax filed a motion to amend his petition to assert an additional claim of ineffective assistance of counsel based on his attorneys' failure to object, pursuant to *Shepard v. United States*, 544 U.S. 13 (2005), and *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), to the use of a prior state-court conviction to enhance his sentence. Because I find that Broadnax and his attorneys agreed that no appeal would be filed following sentencing, Broadnax's petition for habeas corpus (doc. # 1) is denied. Moreover, because the proposed amendment would be futile, Broadnax's motion to amend his petition (doc. # 29) is also denied.

**I.     Background**

On December 5, 2006, the government indicted Broadnax on five counts of possession with the intent to distribute cocaine base (i.e., crack cocaine), in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(A)-(B) (2006). On December 13, 2006, the government filed an information pursuant to 21 U.S.C. § 851(b) stating that Broadnax had been previously convicted of a felony drug offense and therefore faced increased mandatory minimum penalties. Subsequently, the government filed three superseding indictments, the last of which included,

*inter alia*, charges against Broadnax for conspiracy to possess with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 846, and to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B) & 1956(h).  The government also filed two amended second offender informations under 21 U.S.C. § 851.  The second amended information, filed on December 31, 2007, listed the following six felony drug offenses of which Broadnax was previously convicted:

> a. On or about October 21, 2002, the defendant was convicted in the Bridgeport Superior Court of the State of Connecticut of the crime of Conspiracy to Sell Narcotics in violation of [Connecticut General Statutes, Section] 21a-277(a), a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(A) & 851;
>
> b. convicted on October 18, 1999 in Connecticut Superior Court of the crime of Sale of Narcotics, in violation of Connecticut General Statutes, Section 21a-277(a), a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(A) & 851;
>
> c. convicted on October 18, 1999 in Connecticut Superior Court of the crime of Sale of Narcotics, in violation of Connecticut General Statutes, Section 21a-277(a), a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(A) & 851;
>
> d. convicted on February 11, 1993 in Connecticut Superior Court of the crime of smuggling in prison, in violation of Connecticut General Statutes, Section 53a-174(a), a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(A) & 851;
>
> e.  convicted on November 20, 1992 in Connecticut Superior Court of the crime of Possession of Narcotics, in violation of Connecticut General Statutes, Section 21a-279(a), a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B),  841(b)(1)(A) & 851; and
>
> f.  convicted on May 29, 1986 in Connecticut Superior Court of the crime of Sale of Narcotics, in violation of Connecticut General Statutes, Section 21a-277(a), a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(A) & 851.

Second Amended Second Offender Information at 2-3 (3:06cr317 (SRU) doc. # 156).

On January 14, 2008, jury trial began.  On January 22, 2008, during the fifth day of trial, Broadnax pled guilty to Counts One and Eight of the third superseding indictment, the cocaine base and money laundering conspiracy charges, respectively.  Because of Broadnax's prior felony drug offense convictions, he faced a mandatory minimum punishment of 20 years' imprisonment on Count One, as well as classification as a career offender under section 4B1.1 of the United States Sentencing Guidelines.  In the plea agreement, however, Broadnax expressly reserved "his right to contest his guideline calculation as a career offender based on his criminal history."  Plea Agreement at 5 (3:06cr317 (SRU) doc. # 187).

Broadnax moved for a hearing to challenge the evidentiary basis for, and the validity of, his prior felony drug offense convictions, which the court granted.  Mot. for Immediate Hr'g Pursuant to 21 U.S.C. § 851 (3:06cr317 (SRU) doc. # 205); Apr. 21, 2008 Minute Entry (3:06cr317 (SRU) doc. # 236).  On May 8, 2008, an evidentiary hearing was held, and on May 23, 2008, the court issued a written decision holding that the government had proven at least one of Broadnax's prior felony drug offenses beyond a reasonable doubt.  *See* Ruling and Order (3:06cr317 (SRU) doc. # 249).  Based on state court filings and the testimony of the government's case agent, a fingerprint analyst, and Broadnax's state and federal probation officers, the court found beyond a reasonable doubt that, on February 11, 1993, Broadnax was convicted of "smuggling narcotics into prison," in violation of Conn. Gen. Stat. § 53a-174(a).  *Id.* at 6-7.  The court did not make any findings with respect to Broadnax's five other prior felony drug offenses.

Broadnax was sentenced on June 23, 2008.  At sentencing, the court noted that Broadnax faced a mandatory minimum punishment of 20 years' imprisonment, as well as a guidelines range of 292 to 365 months' imprisonment, to which the parties had stipulated in Broadnax's

- 3 -

plea agreement. June 23, 2008 Tr. at 15-17 (3:06cr317 (SRU) doc. # 278). The court sentenced Broadnax to the statutory mandatory minimum punishment of 20 years' imprisonment, as well as 10 years' supervised release. *Id.* at 47. At the hearing's conclusion, the court informed Broadnax of his appellate rights.

> THE COURT: I need to advise you that you have the right to appeal your sentence and that you will lose that right unless you file a written Notice of Appeal within ten days[1] of the entry of judgment. Do you understand the time limit within which to file a Notice of Appeal?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. If you wish to appeal but you cannot afford to do so, you can file a motion to proceed in forma pauperis. If that motion is granted, the court will waive the cost of your appeal, that is[,] the filing fee, and will appoint a lawyer to handle your appeal at no cost to you. Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 50. Judgment entered with respect to Broadnax on June 24, 2008. Broadnax never filed a notice of appeal.

Broadnax commenced this suit on May 4, 2009, alleging that he was deprived of his Sixth Amendment right to the effective assistance of counsel when his attorneys failed to file an appeal on his behalf. The court appointed counsel for Broadnax on February 1, 2010, and a hearing was held on April 22, 2010, during which the parties represented that affidavits would be sufficient to establish the facts regarding counsel's decision not to file a notice of appeal. On September 8, 2010, Broadnax filed two documents with the court. First, he supplied a memorandum and supporting affidavits showing that he had directed his attorneys to file a notice of appeal following his sentencing, which they ignored. And, second, Broadnax filed a memorandum arguing that, if habeas relief were to be granted on his claim of ineffective

---

[1] In 2009, Federal Rule of Appellate Procedure 4(b)(1)(A) was revised to provide for a

- 4 -

assistance of appellate counsel, he was entitled to a new sentence under *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), because the government never proved that Broadnax had been previously convicted of a felony drug offense. The government filed an opposition memorandum on March 7, 2011. The government attached to its memorandum evidence showing that Broadnax agreed that his attorneys should not file an appeal on his behalf, and argued that counsel did not render ineffective assistance by not filing a notice of appeal. The government reserved its right to challenge Broadnax's *Savage* claim.

## II.     Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Under the Sixth Amendment to the United States Constitution, a criminal defendant is entitled to effective assistance of counsel at trial and on appeal, *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006), and "trial counsel's failure to file a requested appeal constitutes an independent ground of habeas relief.'" *Garcia v. United States*, 278 F.3d 134, 137 (2d Cir. 2002) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)).

When a habeas petitioner alleges a claim of ineffective assistance on the basis of counsel's failure to file a notice of appeal, the Court of Appeals has instructed that the following proceedings should ensue: "(1) a hearing before the district court pursuant to § 2255 to determine whether the client requested the appeal; (2) an appeal from the district court's ruling, should either party seek one; and (3) a direct appeal if the defendant did in fact request that a notice of appeal be filed." *Campusano*, 442 F.3d at 776. The hearing that the court must convene need

---

fourteen-day time limit within which to file a Notice of Appeal in criminal cases.

not be a full testimonial hearing, however.  Instead, affidavits may suffice when live testimony "would add little or nothing to the written submissions." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001); *see, e.g.*, *Sanchez v. United States*, No. 3:09cv1330 (SRU), 2011 WL 1885348, at *5 (D. Conn. May 18, 2011) (ruling on claim of ineffective assistance of counsel following a hearing limited to affidavits and the record of petitioner's underlying criminal case); *Nicholson v. United States*, 566 F. Supp. 2d 300, 305 (S.D.N.Y. 2008) (holding that affidavits and record of petitioner's underlying criminal case constituted sufficient hearing to decide petition for habeas relief).

When raising ineffective assistance of appellate counsel claims, it is the petitioner's burden to show "(1) that counsel's representation fell below an objective standard of reasonableness, . . . and (2) that counsel's deficient performance prejudiced the [petitioner]." *Flores-Ortega*, 528 U.S. at 476-77.  Ultimately, it is the petitioner's burden to demonstrate by a preponderance of the evidence that he was deprived of his Sixth Amendment right. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *Dolney v. United States*, No. 07cv4040 (NGG), 2011 WL 73076, at *3 (E.D.N.Y. Jan. 10, 2011).

### III.    Discussion

In *Flores-Ortega*, the Supreme Court distinguished two types of claims premised on counsel's failure to file a notice of appeal: (1) when counsel's failure to file contradicted his client's express direction to appeal, and (2) when counsel did not file an appeal because his client was silent on the matter.  *See* 528 U.S. at 477 (contrasting "a lawyer who disregards specific instructions from the defendant to file a notice of appeal" with counsel who does not file a notice of appeal "when the defendant has not clearly conveyed his wishes one way or the other").  Broadnax contends that his case falls within the former category.  That is, he alleges in his petition (and attests in his affidavit) that he instructed his attorneys to file a notice of appeal, and

his attorneys did not act on that request.

If Broadnax could demonstrate that his attorneys ignored his instruction to file a notice of appeal, he would establish a Sixth Amendment violation and be entitled to collateral relief.  An attorney who ignores his client's request to file a notice of appeal "acts in a manner that is professionally unreasonable . . . because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice.  Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes."  *Id.*  Moreover, when counsel fails to file a notice appeal, prejudice is presumed because his client will have been deprived "of more than a fair judicial proceeding," but "the appellate proceeding altogether."  *Id.* at 483.  Thus, both prongs of the ineffective assistance test would be met.

Broadnax relies on two affidavits to support his assertion that he instructed his attorneys to file a notice of appeal.  In the first affidavit, Broadnax avers that, when he pled guilty, he specifically reserved the right to contest the use of his criminal history to enhance his sentence, and that on June 23, 2008, following sentencing, he overruled his attorneys' advice not to file an appeal.  Broadnax Aff. ¶¶ 6, 10 (doc. # 23).  According to Broadnax, one of his attorneys, Hugh F. Keefe, told him that he would visit him at the Wyatt Detention Facility ("Wyatt") to discuss the appeal further.  *Id.* ¶ 10.  Keefe never visited but, instead, spoke to Broadnax by telephone the following day, June 24, 2008.  Broadnax asserts that, during the phone call, he repeated his wish to file a notice of appeal.  Immediately following their conversation, Keefe mailed a letter memorializing that Broadnax "agreed with [his attorneys'] analysis and agreed with [their] recommendation that you, nor our office, would appeal."  *Id.* ¶ 11.  Finally, Broadnax claims that, at some point, he contacted his wife, Margarita Broadnax, and told her to relay his request

for an appeal to his attorneys. *Id.* ¶ 13. Margarita Broadnax spoke with Keefe's co-counsel, Nicole Fournier Gelston, who took Margarita Broadnax's message and said she would pass it along to Keefe. *Id.*

Margarita Broadnax also submitted an affidavit on her husband's behalf. She averred that sometime in the two days following Broadnax's sentencing, she received a phone call from her husband directing her to contact Keefe and request that he file a notice of appeal. Margarita Broadnax Aff. ¶ 5 (doc. # 23). On or about June 25, 2008, she spoke with Gelston and told her that Broadnax wished for Keefe to file a notice of appeal in his case.

The government has produced two opposing affidavits from Keefe and Gelston showing that Broadnax received effective assistance of counsel. Keefe avers that he and Gelston conferred with Broadnax on June 23, 2008 after sentencing, but Keefe denies telling Broadnax that he would visit him at Wyatt. Keefe Aff. ¶¶ 3-4 (doc. # 25, Ex. C). Keefe and Gelston then spoke with Broadnax by phone on June 24, 2008. *Id.* ¶ 5. According to Keefe, during that conversation, Keefe, Gelston, and Broadnax discussed the wisdom of filing a notice of appeal and determined "that an appeal would not be taken as it could result in an increased sentence for Mr. Broadnax and had virtually no chance of resulting in a reduction of his sentence." *Id.* ¶ 6. Keefe also states that at no point during the conversation did Broadnax say that "he disagreed with the analysis or that he wanted either Attorney Gelston or myself to file an appeal." *Id.* Keefe then wrote the letter dated June 24, 2008 to Broadnax in order to memorialize their discussion. *Id.* ¶ 7. He denies that Margarita Broadnax ever instructed him or Gelston to file a notice of appeal, and maintains that "[h]ad either Margarita Broadnax or Mr. Broadnax instructed me to file an appeal, or otherwise indicated that Mr. Broadnax continued to want to pursue an appeal, I would have asked Attorney Gelston to file a timely Notice of Appeal." *Id.*

Gelston's affidavit is consistent with Keefe's recollection. Gelston's statement, which largely echoes Keefe's affidavit, adds that it was unlikely that they would have agreed to visit Broadnax at Wyatt because "we were extremely pleased that the Court departed from the sentencing guidelines and sentenced Mr. Broadnax to the minimum sentence available under the law." Gelston Aff. ¶ 4 (doc. # 25, ex. B). She also confirms the details of the phone conversation on June 24, 2008, and adds that "Mr. Broadnax agreed that it was very unlikely that an appeal would yield a lesser sentence and could, in fact, result in an increased sentence," and that "[a]t no point during that conversation, did Mr. Broadnax instruct myself or Hugh Keefe to file an appeal." *Id.* ¶ 6. Gelston denies that Margarita Broadnax ever called to instruct Keefe and her to file a notice of appeal for Broadnax. Like Keefe, Gelston maintains that "[h]ad either Margarita Broadnax or Mr. Broadnax instructed me to file an appeal or otherwise indicated that Mr. Broadnax continued to want to pursue an appeal, pursuant to my custom and practice, I would have filed a timely notice of appeal." *Id.* ¶ 8. Finally, Gelston says that Broadnax had been deeply involved in his defense and would have demanded that Keefe and Gelston show him his appeals papers before filing them, but neither Broadnax nor his wife ever consulted with Keefe and Gelston about the appeal after June 25, 2008, at the latest. *Id.* ¶ 9-10.

In addition to those two affidavits, the government also included the letter Keefe mailed to Broadnax on June 24, 2008. That missive is in harmony with Keefe's and Gelston's accounts. In the letter, Keefe stated that the document was intended to memorialize their phone conversation and reiterated that "Attorney Fournier Gelston and I both strongly recommend that you not [file a notice of appeal] because you have absolutely nothing to gain and nothing to appeal and, by filing an appeal of the sentence, I believe it would invite an appeal by the Government that your sentence was not within the sentencing guidelines and there was not a

- 9 -

sufficient reason to depart downwards." June 24, 2008 Letter (doc. # 25, ex. A). The letter concluded by reminding Broadnax that he "agreed with our analysis and agreed with our recommendation that you, nor our office, would appeal." *Id.*

Broadnax has not carried his burden to prove by a preponderance of the evidence that he instructed his attorneys to file a notice of appeal. For several reasons, Broadnax's evidence is not as persuasive as the affidavits and letter the government has put forward. First, Keefe's and Gelston's affidavits are corroborated by the June 24, 2008 letter that Keefe wrote to Broadnax. Indeed, the letter is the only contemporaneous documentation of the conversation between Broadnax and his attorneys, and it reveals that Broadnax's counsel strongly recommended against filing a notice of appeal and that Broadnax accepted their advice. The affidavits of Broadnax and Margarita Broadnax postdate Broadnax's sentencing by nearly two years, and there is no other evidence from the time of Broadnax's sentencing that supports their versions of events.

Second, Broadnax cannot explain the inconsistency between his vigilance in pursuing an appeal in the 48 hours after his sentencing and his quietude between June 25, 2008 and May 4, 2009, the date he filed this lawsuit.[2] The most credible explanation for that conduct is that Broadnax took his attorneys' recommendation and chose not to pursue a futile appeal of a favorable sentence. Or, at least, the government's case is more convincing than the competing argument that Broadnax — who by all accounts was an active participant in his defense — casually lost interest in challenging his enhanced mandatory minimum two days after sentencing, and thereafter stopped contacting his attorneys and made no effort to inquire about his appeal. Other courts faced with similar gaps in time between a petitioner's alleged instruction to file a

---

[2] Broadnax admits he received the June 24, 2008 letter, and yet he still waited until May

notice of appeal and the filing of a habeas petition have held that the petitioner's delay is circumstantial evidence that no notice of appeal was ever requested. *See, e.g.*, *Colon v. United States*, No. 07cv2172 (BSJ), 2010 WL 1644260, at *6 (S.D.N.Y. Apr. 21, 2010) (holding that 11-month delay between final judgment and filing of habeas petition "undermines [petitioner's] claim that he asked his counsel to file a notice of appeal and his counsel refused"); *Nicholson*, 566 F. Supp. 2d at 305 (holding that unexplained eight-month period between petitioner's purported request that a notice of appeal be filed and his habeas petition was "more consistent with a fair inference that no request for such appeal was ever communicated to counsel"); *Garcia v. United States*, No. 06cv7821 (LBS), 2007 WL 1295726, at *3 (S.D.N.Y. Apr. 26, 2007) (holding that 11-month delay, in addition to petitioner's proffering of "no evidence of ever contacting counsel to inquire how his appeal was proceeding" or engaging in follow-up communications, damaged petitioner's claim that he instructed counsel to file a notice of appeal).

Third, Broadnax and his wife have a stronger incentive than Keefe and Gelston to give self-serving testimony. Although Keefe and Gelston may wish to avoid an ineffective assistance judgment for the sake of their reputations, Broadnax and Margarita Broadnax stand to gain a much greater prize — namely, Broadnax's liberty — by providing favorable, selective, or skewed affidavits. Moreover, Keefe's and Gelston's sworn averments that they ultimately followed Broadnax's instruction to not file a notice of appeal are consistent with their overall commitment to their client, which led them to represent Broadnax in a five-day trial, negotiate a plea agreement, challenge the six prior felony drug offenses leveled against Broadnax, and secure a non-guidelines sentence. It seems improbable that, after all their previous efforts, Keefe and Gelston would take a shortcut by disregarding their client's instruction to file a notice of

---

4, 2009 to take action on his own behalf. *See* Broadnax Aff. ¶ 11.

appeal. In total, Broadnax and Margarita Broadnax have compelling reasons to tailor their testimony, while it is unlikely that Keefe and Gelston would misrepresent their client's agreement not to appeal. As another district court remarked in a similar case, "[i]n light of [counsel's] demonstrated dedication to [their] client, and [their] sworn statement[s] that Petitioner never asked [them] to file a notice of appeal, it is simply not plausible that [counsel], as Petitioner now self-servingly claims, simply ignored Petitioner's request that a notice of appeal be filed." *Dolney*, 2011 WL 73076, at *5.

Finally, the government's version of events is buttressed by the weak claims Broadnax would have to present on appeal. Broadnax argues that he had an appealable issue that the 1993 conviction for introducing contraband into prison was never proven to be a "felony drug offense" that could enhance his mandatory minimum sentence under 21 U.S.C. §§ 841(b) and 851. That is, Broadnax contends that his crime of conviction is broader in scope than the term "felony drug offense" as defined in 21 U.S.C. § 802(44), and a person could be convicted of a felony in Connecticut for smuggling into prison contraband other than drugs, such as "intoxicating liquors, any firearm, weapon, dangerous instrument or explosive of any kind, any United States currency, or any rope, ladder or other instrument or device for use in making, attempting or aiding an escape." Conn. Gen. Stat. § 53a-174(a); *cf. Savage*, 542 F.3d at 965-67 (holding that, because Connecticut's prohibition of the sale of narcotics was broader than the Sentencing Guidelines' definition of a "controlled substance offense," the government had to prove that defendant's prior conviction "necessarily rested on the fact identifying the conviction as a predicate offense" (quotation omitted)).

At the May 8, 2008 evidentiary hearing, however, the government introduced evidence showing that the conduct underlying Broadnax's 1993 felony conviction was his introduction of

*marijuana* into prison. *See* May 8, 2008 Tr. at 36 (3:06cr317 (SRU) doc. # 302) (testimony of FBI agent David Dillon that Broadnax was arrested for smuggling marijuana in prison on January 9, 1993); Second Amended Second Offender Information, Ex. 1, at 4 (certified conviction record introduced at evidentiary hearing showing that on January 9, 1993, Broadnax was charged with possession of marijuana and conveying an unauthorized item into a prison, but pled guilty only to the contraband charge). That evidence supported the Court's May 23, 2008 finding that Broadnax was, in fact, convicted of "smuggling narcotics into prison" in 1993. Ruling and Order, at 6; *see also* 21 U.S.C. § 802(44) (defining "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law . . . that prohibits or restricts conduct relating to . . . marihuana").

Broadnax now argues that, in hindsight, the Court's reliance on testimony and other documents presented at the evidentiary hearing to determine whether the 1993 contraband conviction qualified as a "felony drug offense" for enhancement purposes under sections 841(b) and 851 contravened the "modified categorical approach" established by *Shepard*, 544 U.S. at 19,[3] and reinforced by the Second Circuit in *Savage*, 542 F.3d at 965-67, a decision rendered

---

[3] In *Shepard*, the United States Supreme Court expanded upon its earlier decision in *Taylor v. United States*, 495 U.S. 575 (1990), which held that inquiries into whether prior convictions constitute violent felonies under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), are limited by a "formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600. *Shepard* held that "*Taylor*'s reasoning controls the identification of . . . convictions following pleas, as well as convictions resulting from guilty verdicts." *Shepard*, 544 U.S. at 19. Thus, when determining whether a prior conviction resulting from a guilty plea qualifies as a violent felony under the ACCA, a court's inquiry is limited to the statutory definition of the crime, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26.

several months *after* Broadnax was sentenced in June 2008.[4] But even with *Savage* in his quiver, Broadnax's potential appeal would have struck most in the legal profession at the time as a long shot. When Broadnax and his counsel were contemplating a potential appeal back in 2008, it was, at best, uncertain whether *Shepard* and/or *Savage* applied to sentencing enhancements under sections 841(b) and 851. Although the Second Circuit had extended *Shepard*'s approach to analogous provisions under U.S.S.G. § 4B1.2, *see United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008), it had not yet held that *Shepard*'s rule reached as far as sections 841(b) and 851.[5] On the contrary, because *Shepard* itself was a case of statutory construction, multiple courts had concluded—and apparently still conclude—that the decision was limited on its face to the statutory language it construed: the Armed Career Criminal Act, 18 U.S.C. § 924(e), and

---

[4] In *Savage*, the Second Circuit applied the *Taylor-Shepard* rule to the Career Offender provision of the United States Sentencing Guidelines, holding that a prior conviction under Conn. Gen. Stat. § 21a-277(b), obtained via an *Alford* plea, could not categorically qualify as a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2 because the Connecticut statute criminalizes conduct that falls outside of the Guidelines definition. *See Savage*, 542 F.3d at 964-65. The *Savage* Court determined that the Connecticut statute was overly inclusive as compared to the Guidelines and, as a result, the Government was obligated to show "that the plea 'necessarily' rested on the fact identifying the conviction as a predicate offense." *Id.* at 966 (quoting *Shepard*, 544 U.S. at 21). Thus, the "determinative issue [wa]s whether the judicial record of the state conviction established with 'certainty' that the guilty plea 'necessarily admitted elements of the [predicate] offense.'" *Id.* (quoting *Shepard*, 544 U.S. at 25) (alteration in the original). Because an *Alford* plea, by definition, does not guarantee confirmation of the factual basis for the plea, the Court ultimately vacated the defendant's sentence and remanded for further proceedings. *Id.* at 967.

[5] It was not until January 2013 that the Second Circuit explicitly acknowledged that *Shepard* applies to sentencing enhancements under sections 841 and 851. *See McCoy v. United States*, 707 F.3d 184, 187 (2d Cir. 2013). The Second Circuit had mentioned *Shepard*'s general principle when discussing sections 841 and 851 in *United States v. Roman*, 464 F. App'x 32, 34-35 (2d Cir. 2012), but had never so held. Moreover, I am aware of only two previous district court opinions that applied *Shepard*'s rule to sections 841 and 851, both of which were not decided until 2011. *See Samas v. United States*, No. 3:10-cv-422 (JCH), 2011 WL 221866, at *4 (D. Conn. Jan. 20, 2011); *McCoy v. United States*, No. 3:09-cv-1960 (MRK), 2011 WL 3439529, at *5 (D. Conn. Aug. 4, 2011).

analogous provisions under the Career Offender Guideline, U.S.S.G. § 4B1.2.  *See United States v. Marsh*, 561 F.3d 81, 87 (1st Cir. 2009) ("We have never extended *Shepard*'s holding beyond the realm of the [Armed Career Criminal Act] or the Career Offender Guideline, U.S.S.G. § 4B1.2."); *United States v. Rios-Garcia*, Civ. 05-3255 (KHV), 2005 WL 3845345, at *9 (D. Kan. Dec. 8, 2005) ("*Shepard* did not restrict the procedure for the Court's determination of a prior conviction under Section 851."); *see also United States v. Harrington*, 617 F.3d 1063, 1065 (8th Cir. 2010) ("Although we have previously discussed the principles of [*Shepard*] in connection with §§ 841 and 851, *see United States v. Ramon-Rodriguez*, 492 F.3d 930, 940 (8th Cir. 2007), we have not held that it applies in this context.").  Thus, at the time, there was little case law to support Broadnax's broad challenge to his sentencing enhancement.  The weakness of Broadnax's potential appeal, especially when a cross-appeal of Broadnax's non-guidelines sentence still loomed, is consistent with Keefe's and Gelston's narrative of strongly discouraging Broadnax from appealing.  Furthermore, it explains why Broadnax took their advice.

In sum, the evidence available from the time immediately following sentencing shows that Broadnax agreed not to file an appeal; Broadnax's silence with respect to his appeal between June 25, 2008 and May 4, 2009 is at odds with his position that he always favored appealing his sentence; Keefe's and Gelston's affidavits are more credible in light of the circumstances and the parties' respective interests; and Broadnax's low probability of success on appeal explains why he accepted counsel's recommendation.  Because I find that Broadnax agreed with his attorneys' advice and chose to forgo an appeal of his sentence, Broadnax has not met his burden to prove by a preponderance of the evidence that his attorneys provided ineffective assistance by failing to file a notice of appeal.  Accordingly, Broadnax's motion to vacate, set aside, or correct his sentence must be denied.

**IV.     Motion to Amend**

On September 19, 2012, several years after filing his initial habeas petition, Broadnax filed a motion to amend his petition to assert, for the first time, an additional claim of ineffective assistance based on his attorneys' failure to raise a *Shepard-Savage* objection to the use of the 1993 conviction to enhance his sentence under sections 841(b) and 851 (doc. # 29).  Assuming, *arguendo*, that Broadnax's new ineffective assistance claim relates back and could therefore be added to the petition and considered timely under Federal Rule of Civil Procedure 15(c), for the reasons that follow, the proposed amendment nonetheless must be denied as futile. *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) ("[A] district court may properly deny leave when amendment would be futile.").

As noted above, to prevail on an ineffective assistance claim, Broadnax must establish that (1) his counsel performed deficiently, and (2) the deficiency caused actual prejudice. *See Strickland*, 466 U.S. at 687; *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Broadnax, therefore, must establish that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730.

Here, Broadnax claims he received ineffective assistance of counsel because his attorneys failed to challenge his 1993 conviction on *Shepard-Savage* grounds.   At the May 2008 evidentiary hearing, however, the government presented evidence of not one, but six prior state-court convictions, any one of which independently qualified as a predicate offense for

- 16 -

enhancement purposes under sections 841(b) and 851.[6]  Specifically, in addition to the 1993 conviction, the government established that Broadnax had three prior convictions for sale of narcotics in violation of Conn. Gen. Stat. § 21a-277(a); one prior conviction for conspiracy to sell narcotics in violation of Conn. Gen. Stat. § 21a-277(a); and one prior conviction for possession of narcotics in violation of Conn. Gen. Stat. § 53a-174(a).  *See* Second Amended Second Offender Information at 2-3 (3:06cr317 (SRU) doc. # 156); May 8, 2008 Tr. (3:06cr317 (SRU) doc. # 302).  Thus, even if the 1993 conviction could not serve as a predicate to enhance Broadnax's sentence, the government had five other qualifying convictions on which to rely.  As a result, his attorneys' failure to object to the 1993 conviction on *Shepard-Savage* grounds did not result in any actual prejudice.  *See Strickland*, 466 U.S. at 697 (stating that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"); *see also United States v. Price*, 443 F. App'x. 576, 579 (2d Cir. 2011) ("Because [defendant] clearly was not prejudiced by his lawyer's failure to object to this testimony, we need not address whether the lawyer's conduct fell below the professional standard.") (citing *Strickland*, 466 U.S. at 697).  Because Broadnax's newly-asserted ineffectiveness claim fails at the threshold, his proposed amendment is futile.

Moreover, to the extent Broadnax argues that his counsel was ineffective for failing to levy a *Shepard-Savage* challenge to his prior convictions for violating Connecticut's controlled substance laws under Conn. Gen. Stat. §§ 21a-277(a) and 53a-174(a), that claim is foreclosed by

---

[6] In his objection to the government's second offender notice, Broadnax "argued that the government could not prove his prior convictions, but he did not explicitly deny that he had been convicted as set forth in the section 851 notice."  Ruling and Order at 5 (3:06cr317 (SRU) doc. # 249).  Therefore, in order to trigger the enhanced penalty provisions of sections 841(a)(1) and 841(b)(1)(A), the government only had to prove one prior conviction by a preponderance of the evidence to support the enhancement.  *See* 21 U.S.C. § 851(c)(1)-(2).

the Second Circuit's recent decision in *McCoy v. United States*, 707 F.3d 184 (2d Cir. 2013). There, the Second Circuit rejected a habeas petitioner's ineffective assistance claim based on his attorney's alleged failure to anticipate and raise at trial a *Savage*-type objection to a second offender notice—a notice that similarly relied on a prior drug conviction under section 21a-277(a)—well before *Savage* itself was decided. *Id.* at 188-89. Noting that "'[a]n attorney is not required to forecast changes or advances in the law' in order to provide effective assistance of counsel," *id.* at 188 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001)), the Second Circuit explained that, even after *Savage* was decided in September 2008,

> it was not immediately apparent to the defense bar that an *Alford* plea to Connecticut's controlled substance laws could not categorically serve as the basis to enhance a sentence under 21 U.S.C. § 841(b). . . . Indeed, it was not until June 29, 2009 that the government acknowledged § 21a-277(a) criminalized conduct involving narcotic substances not covered by the federal definition of a "felony drug offense" used in 21 U.S.C. §§ 802(44) and 841(b)(1). *See* Sentencing Mem. of United States at 6-8, *United States v. Jackson*, No. 3:06-cr-151 (MRK) (D. Conn. June 29, 2009) (ECF No. 96). We should not fault trial counsel for failing to raise an objection to the second offender enhancement the legal basis for which was not sustained until almost three years after trial. . . . [G]iven the defense bar's long-held position that Connecticut narcotics convictions categorically qualified under § 851, it did not constitute ineffective assistance for trial counsel to fail to challenge the second offender notice.

*Id.* at 188.

Here, as in *McCoy*, Broadnax's counsel cannot be faulted for failing to predict the outcomes of future Second Circuit cases. As noted above, while Broadnax was sentenced on June 24, 2008, *Savage* was not decided until several months later on September 18, 2008. Because "counsel's performance must be assessed . . . as of the time of counsel's conduct without the benefit of hindsight," *Sellan*, 261 F.3d at 315, Broadnax's attorneys did not render ineffective assistance by assuming, along with the rest of the defense bar at the time, that a Connecticut narcotics conviction categorically qualified as a predicate felony drug offense under

sections 841(b) and 851 and failing to object on that basis.  In light of the above, Broadnax's newly-proposed ineffectiveness claim is wholly without merit and the motion to amend must be denied as futile.

**V.	Conclusion**

In sum, Broadnax's motion to vacate, set aside, or correct his sentence (doc. # 1) is DENIED.  Further, Broadnax's belated motion to amend his petition (doc. # 29) is DENIED on grounds of futility.

It is so ordered.

Dated at Bridgeport, Connecticut, this 21st day of August 2013.

 /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge